UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

WILLIAM LAVELLE WALKER,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

Case No. 4:19-cv-00358-BLW

**MEMORANDUM DECISION AND ORDER**

Petitioner William "Bill" Lavelle Walker's Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 is now fully briefed and ripe for adjudication. Dkt. 1, 9, 14.[1] Having reviewed the parties' filings and considered the record in this matter and in the underlying criminal matter, and having found that the motion and the record conclusively show that the prisoner is entitled to no relief, the Court enters the following Order denying the Motion.

## PRELIMINARY MOTIONS

Petitioner moves the Court to limit the scope of his waiver of attorney-client privileged communications with his criminal trial counsel, Mr. Kelly Kumm. Dkt. 7.

---

[1] All references to the docket are to the civil docket in this case, unless otherwise designated "Crim. Dkt.," referring to the underlying criminal case No. 4:16-cr-00111-BLW-1, *USA v. Walker*.

**MEMORANDUM DECISION AND ORDER - 1**

Because Petitioner has placed at issue his attorney-client communications regarding all proceedings between his first meeting with Mr. Kumm, through sentencing, the United States is permitted to obtain records and information in the possession of Mr. Kumm, including work product and items which would otherwise be considered covered by the attorney-client privilege, in defending against Petitioner's § 2255 motion. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials"). Here, the law limits Respondent's use of Petitioner's attorney-client privileged information to adjudication of the claims in this § 2255 action only; information obtained in this action may not be used in other actions or for other purposes. *See id.* at 722. The Court finds that the declaration of Mr. Kumm submitted by the United States is within the scope of permissible information. *See* Dkt. 9-3.

Petitioner also requests appointment of counsel. Dkt. 7. Because Petitioner has raised no material disputes of fact and there is no reason to hold an evidentiary hearing or conduct discovery, the Court will deny Petitioner's motion for appointment of counsel.

## BACKGROUND

Petitioner started and stopped using methamphetamine several times beginning in 2005, continuing into 2016, during the time he was on pretrial release pending resolution of the criminal charges in this case. Crim. Dkts. 126 at 2 & 158 at 2.

His criminal history also shows a state conviction of theft by possession of stolen property in August 2005, for which he received a suspended five-year unified sentence. However, he violated probation twice. On March 10, 2009, Petitioner's probation was

**MEMORANDUM DECISION AND ORDER - 2**

revoked and his sentence imposed, but then immediately suspended again, with four years of probation imposed. He petitioned and obtained an order of release from probation in that case on July 20, 2011. Exhibit1 to Order at 36-37.

Petitioner was arrested for possession of methamphetamine in 2012 and 2013, after which he became a confidential informant for the Twin Falls Police Department. His involvement in methamphetamine heightened. Next, in a role reversal, on February 18, 2015, Twin Falls police gave another informant $400 in marked bills to purchase methamphetamine *from* Petitioner. The informant went to Petitioner's house and purchased 18.5 grams from Petitioner on that date. On February 19, 2015, officers applied for and obtained a search warrant for Petitioner's house. They found Petitioner in possession of 1.7 grams of methamphetamine and $888 in cash, including some of the marked bills from the informant. They also found five firearms, four of them reported stolen, at Petitioner's residence. Dkt. 117 at 4-5.

After his arrest, Petitioner again asked to be a confidential informant. He told the Drug Enforcement Agency (DEA) investigators that he was buying approximately three to six pounds of methamphetamine at a time from a source in Arizona. *Id*. at 4. Petitioner reported that he was owed over $60,000 from Twin Falls area dealers and users to whom he fronted methamphetamine. *Id*. The investigators was never able to determine the source of Petitioner's drugs, because his supplier would not sell him any more drugs until he paid his own debt to the supplier.

In February 2016, officers made several controlled purchases of methamphetamine from a suspect named Miguel Angel Otaegui, in Burley, Idaho, a town near Twin Falls.

**MEMORANDUM DECISION AND ORDER - 3**

Crim. Dkt. 157 at 5. Also in February 2016, officers made a controlled purchase from a suspect named Jose Luis Hernandez in Burley. Officers obtained a warrant to put a GPS tracking device on Otaegui's car.

Between February and April 2016, Petitioner and John David Jones were living at Petitioner's Twin Falls residence. During that same time period, Petitioner also spent significant time staying in Boise with his life partner Carolyn Manwaring and visiting his daughters, which left Jones with almost exclusive use of Petitioner's Twin Falls home. Dkt. 9-2 at 20-21.

On March 14, 2016, a government informant gave Hernandez $1,425 to purchase two ounces of methamphetamine. Hernandez passed the money to Otaegui, who took it to Petitioner's house, picked up 48.2 grams of methamphetamine, and travelled back to the controlled purchase location to deliver the drugs. Crim. Dkt. 157 at 6.

On March 31, 2016, an undercover officer arranged with Otaegui to purchase four ounces of methamphetamine. Otaegui did not have that quantity of drugs. The officer gave Otaegui $700 in marked bills for a lesser amount, 22.5 grams. Otaegui said he needed to go to Twin Falls to get the rest, and he traveled to Petitioner's house to retrieve the drugs. He delivered 48.2 additional grams of methamphetamine to the officer, who paid him $1,500 in marked bills. *Id.* at 6.

On April 15, 2016, law enforcement officers obtained another warrant for the search of Petitioner's Twin Falls home. Dkt. 117 at 7. On April 19, 2016, Petitioner returned to his home from Boise after the birth of his grandson. On April 20, 2016, the warrant was executed. Petitioner and James David Jones were arrested at the home. Bags

**MEMORANDUM DECISION AND ORDER - 4**

containing 27.3 grams and 1.1 grams of methamphetamine and $3,085 were found on Petitioner's person. Marked bills from the undercover officer from the March 31, 2016 drug purchase from Otaegui were among those found on Petitioner's person. *Id.* at 7-8. Law enforcement officers found two additional bags of methamphetamine containing 20.2 grams and 28.9 grams in a shed behind Petitioner's house. *Id.* at 8.

In total, officers recovered 73.55 grams of methamphetamine and eleven firearms from Petitioner's residence. *Id.* A .357 Smith and Wesson revolver located in Petitioner's room had been reported stolen from Gooding County, Idaho. Petitioner admitted to possessing a firearm. Also seized during the search were small amounts of marijuana, baggies with trace amounts of methamphetamine, scales, smoking devices and pipes with residue, scales, ammunition of various calibers, letters, ledgers, and a surveillance camera system. *Id.*

After his arrest, Petitioner agreed to speak with law enforcement officers. During his post-arrest Mirandized interview, he admitted to selling large amounts of methamphetamine in the Twin Falls area—approximately two pounds or more of methamphetamine every month. He also told law enforcement that he hid the methamphetamine in various locations on his property. He admitted to investigators that he supplied methamphetamine to Jones. He also admitted that he knew Otaegui through Jones and that Otaegui had been coming to his house and picking up a methamphetamine from Jones. Crim. Dkt. 114 at 8 (Jones PSR). After Jones was arrested, investigators asked him about his knowledge of Petitioner's drug trafficking activities. He told them,

"William Lavelle Walker had many people that would come to the residence often," but refused to say any more about his co-conspirators. Crim. Dkt. 116 at 8 (Otaegui PSR).

On April 26, 2016, a federal grand jury indicted Petitioner and the three other men for one count of Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846, and 18 U.S.C. § 2, as follows: "From on or about February 24, 2016, through on or about April 20, 2016, in the District of Idaho and elsewhere, the defendants, William Lavelle Walker, James David Jones, Jose Luis Hernandez, and Miguel Angel Otaegui, and others both known and unknown, did knowingly and intentionally combine, conspire, confederate and agree with other persons both known and unknown to the Grand Jury to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. (Crim. Dkt. 1.)

In Petitioner's case, investigators had evidence to show that Petitioner sold or was connected to methamphetamine that was sold on the street on three occasions between March 1, 2016, and March 31, 2016. Because Otaegui and Hernandez' source of methamphetamine on those dates was Petitioner, investigators deduced that he was also the supplier for the February controlled purchases, as the Indictment charges. On the date of his arrest, Petitioner had methamphetamine on his person, methamphetamine in his shed, a firearm in his bedroom, and ten additional firearms in his household. The total amount of seized (actual) methamphetamine attributable to Petitioner was 192.68 grams.

At the time Petitioner hired Mr. Kumm to represent him in the criminal matter, Mr. Kumm had been licensed to practice law in the federal courts of Idaho since

**MEMORANDUM DECISION AND ORDER - 6**

September 1984. He had been a Criminal Justice Act (CJA) attorney for approximately

13 years. Dkt. 9-3 at 1.

In plea negotiations, the United States offered the following in return for

Petitioner's plea of guilty:

- Petitioner would agree that "[d]uring the course of the conspiracy, the defendant was responsible for the distribution of in excess of 1.5 kilograms of methamphetamine";
- Petitioner would be eligible for a three-level reduction for acceptance of responsibility;
- The United States would move for a downward departure if Petitioner provided "substantial assistance" into the investigation of others under USSG §5K1.1 (ultimately resulting in a proposed offense level calculation of 87 to 108 months); and
- Petitioner would not seek a downward departure or variance in sentencing without providing advance notice to the United States.

Crim. Dkt. 93; Civ. Dkt. 9-2 at 5.

Petitioner declares that, on or about October 30, 2016, he and counsel "engaged in

discussions" about the plea offer. Dkt. 1 at 3. In their discussion, Petitioner "protested

many of the averments presented by the Government" in its offer. Petitioner explains:

"Among the critical errors within the agreement that [he] protested were allegations

regarding his whereabouts and activities during the time of the alleged conspiracy, and

his dispute over the weight of the narcotics allegedly attributed to him for distribution

during the pendency of the conspiracy." *Id*. at 3-4.

**MEMORANDUM DECISION AND ORDER - 7**

Mr. Kumm described his discussions with Petitioner about the plea offer as follows:

> Mr. Walker is an intelligent man and asked many questions of me. We discussed the sentencing guidelines at length. We discussed the impact of the government's § 5K motion on the guideline calculations. We discussed departures and variances and their likelihood of success.

Dkt. 9-3, p. 2.

The discussion between Petitioner and Mr. Kumm about the plea agreement turned into a "heated dispute." Dkt. 1 at 4. The focus of the dispute was "the very specifics of the material facts that were contested at his sentencing hearing." *Id*. Petitioner fired Mr. Kumm because Petitioner "had reservations in signing a plea agreement that misrepresented issues of material fact,[2] was grounded in a lack of discovery by [his] counsel that would have provided exculpatory evidence, and did not represent his actual role in the charged crimes [sic]." *Id*.

Mr. Kumm thought the offer was a good one, and told Petitioner that, unfortunately, the United States was not willing to budge on the amount of drugs specified in the written plea agreement. The prosecutor's heel-digging on that point undoubtedly resulted from Petitioner's post-arrest Mirandized admission to investigators that he distributed about two pounds (.90 kg) of methamphetamine per month for the past two months (which would equal about 1.8 kg); he also had told investigators that he was

---

[2] In fact, the plea agreement was consistent with Plaintiff's post-arrest Mirandized admissions to investigators.

"probably responsible for the distribution of 250 pounds (113 kg) of methamphetamine" over the past year. Dkt. 9-2 at 38.

Petitioner did not want to sign the plea agreement because he thought the amount of drugs was too high and his involvement in the conspiracy too low. However, Mr. Kumm advised him that "we have to really appreciate the risks of going to trial." Dkt. 1 at 4. After Petitioner fired his counsel, Petitioner's life partner, Ms. Manwaring[3] and daughter, Margaret Walker, spoke with Mr. Kumm. In an unsworn written statement attached to the § 2255 Motion, Margaret Walker says: "Kelly said if my dad didn't take the deal they discussed he would be facing 20+ years in prison." Dkt. 1-5 at 5. As a result of this advice, Margaret sent a message to Petitioner. *Id*. Petitioner reconsidered, rehired Mr. Kumm, and accepted and signed the written plea agreement.

Foundational to the analysis of this claim is a review of what Petitioner agreed to in the plea agreement and what he acknowledged under oath at the change of plea hearing. On November 16, 2016, Petitioner pleaded guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 846, before United States Magistrate Candy W. Dale, under a waiver of his right to plead guilty before a United States District Judge. Dkt. 9-2. At the start of the change of plea hearing, Judge Dale told Petitioner—and he acknowledged that if he did not answer the questions truthfully, he could be prosecuted for perjury or giving a false statement. Dkt. 9-1, p. 3. Petitioner now claims that his statements to Judge Dale at the change of plea hearing

---

[3] There is no affidavit or written statement attached to the S2255 motion from Ms. Manwaring, about her conversation with Mr. Kumm.

were not truthful. He offers no viable explanation why he would have lied to Judge Dale
in the change of plea hearing, given the penalty for doing so.

At the outset of the hearing, Judge Dale found Petitioner competent to enter a plea
on that date based on Petitioner's responses, Mr. Kumm's assurances, and Judge Dale's
own observation of Petitioner. In an especially thorough plea colloquy conducted by
Judge Dale, Petitioner voiced his assent and agreement with all of the following:

- that he had enough time to discuss the case with his attorney;

- that he fully discussed with his attorney all of the facts and circumstances surrounding the charges that were brought against him;

- that he had the opportunity to review the government's evidence and any available defenses with his attorney;

- that he was satisfied with his attorney's representation of him in this matter;

- that he believed that he had been both adequately and competently represented by his attorney;

- that it was Petitioner's own independent decision to plead guilty;

- that he reviewed the charges in the indictment with his attorney;

- that he signed the plea agreement;

- before he signed the plea agreement, he reviewed every provision in it with his attorney;

- before he signed the plea agreement, he read it multiple times, understood ever provision, went over everything with his attorney;

- that he was "really clear" about the terms of the plea agreement;

- that he understood the maximum sentence he could receive was 20 years with 3 years of supervised released; and

- that he understood the consequences of violating the plea agreement.

Dkt. 9-1 at 5-6, 8, 14-15.

Judge Dale explained the following serious consequences of entering a guilty plea to this particular indictment, to which Petitioner indicated that he understood and agreed:

- If you plead guilty, you will be waiving or giving up your right to exercise these rights. You have the right to maintain your plea of not guilty and to proceed to a trial by a jury. You're presumed innocent of the charges against you and that presumption will continue through trial. At trial, the government would be required to prove your guilt by competent evidence and beyond a reasonable doubt. You would not be required to prove innocence.

- If you plead guilty, you will waive your right to a trial and the other rights I have just discussed. There will be no trial and you will be sentenced on the basis of your guilty plea. If you plead guilty, you will also waive your rights not to testify and not to incriminate yourself because you will have to acknowledge your guilt as to the crime to which you are pleading guilty.

- After the guideline range has been determined, the Court also has the authority in certain circumstances however to depart from the guidelines. Pursuant to the plea agreement, however, if the sentencing judge accepts my recommendation and accepts your plea of guilty, you will not be allowed to withdraw your plea even if the judge imposes a sentence that is more severe than you think it will be today or at the time of sentencing or is more severe than the sentence called for by the guideline range.

At the plea hearing, Petitioner acknowledged and agreed with the factual basis for the crime:

**MEMORANDUM DECISION AND ORDER - 11**

- On or about April 20, 2016, there was an agreement between two or more persons to distribute methamphetamine and, second, that the defendant became a member of the conspiracy knowing of at least one of its objectives and intending to help accomplish it.

- If this matter went to trial, the government could prove each of these elements of the crime by competent evidence and beyond a reasonable doubt.

- The factual basis for the plea agreement was as follows: If this matter were to proceed to trial, the government would prove by competent evidence and beyond a reasonable doubt that from at least February 24, 2016 until April 20, 2016, the defendant agreed with various co-defendants to distribute methamphetamine. In furtherance of this conspiracy, the defendant supplied methamphetamine to co-defendants on several occasions for subsequent distribution within various locations in southern Idaho.

- During the course of the conspiracy, the defendant was responsible for the distribution of in excess of 1.5 kilograms of methamphetamine. The defendant became a member of the conspiracy knowing of at least one of its objectives and intending to help accomplish it.

Petitioner did not disagree with anything in the foregoing summary.

In addition:

- in his own words, he said "that, on or around February 24 through April 20, 2016, I co-conspired with one of my co-defendants ... to distribute methamphetamine."

- He also admitted that he had an agreement with one of the co-defendants in this case to distribute methamphetamine, and that, intending to accomplish the distribution, he specifically purchased methamphetamine and then distributed it.

Dkt. 9-1 at 12-14.

Judge Dale *specifically* asked Petitioner *if he agreed he was responsible for the distribution of in excess of 1.5 kilograms of methamphetamine*. Petitioner held a

**MEMORANDUM DECISION AND ORDER - 12**

discussion off the record with his counsel, and then responded, under penalty of perjury, that he *did agree*. Dkt. 9-1 at 14. He did not ask the Court any questions about this required element of the crime. He did not ask for clarification from the Court. He did not make any equivocal statements about the drug amount. He did not state that his discussion with his attorney was inadequate to resolve his questions and issues. Importantly, he decided to go through with change his plea to guilty on that date.

Petitioner stated under oath that he understood and agreed that, notwithstanding the plea agreement, the District Court had the authority to sentence him to whatever it deemed appropriate, as follows:

- the sentencing judge is not required to accept or be bound by the plea agreement;

- under the guidelines, the sentencing judge will use a number of factors relating to the seriousness of the offense and his prior criminal history and will take into account all circumstances related to his criminal conduct including matters which are not charged by the government in the crime to which he was pleading guilty that day;

- the guidelines are advisory for the sentencing judge. That means the sentencing judge must consider the guidelines but is not required to impose the exact sentence that the guidelines indicate might be appropriate;

- the sentencing judge is required to calculate the applicable guideline range and consider this range as one factor in determining the appropriate sentence;

- the sentencing judge will determine the defendant's sentence by considering the guideline range, possible departures up or down under the guidelines and other sentencing factors as provided under law under 18 USC Section 3553(a); and

- certain facts in the defendant's criminal history, if any, may increase the sentence determined by the sentencing

> guidelines. For instance, factors that will increase the
> guideline range and the potential sentence include having
> a criminal conviction within the past 15 years or
> committing the offense to which the defendant is pleading
> guilty to while on probation or supervised release.

Dkt. 9-1, p. 23-24.

Petitioner said that he understood the consequences and that he knowingly and

voluntarily agreed to all the terms of the plea agreement. Dkt. 9-1, p. 24.

Importantly, both Mr. Kumm and Judge Dale indicated at the hearing that, in

comparison their dealings with other defendants, Petitioner had a very good

understanding of what he was doing and asked questions whenever he needed

clarification:

| COURT: | And Mr. Kumm, are you satisfied that your client's plea of guilty would be a knowledgeable and voluntary plea? |
|---|---|
| MR. KUMM: | Yes, Your Honor. For the record, I would just indicate that Mr. Walker is one of those defendants who's very, very thorough in his attempts to understand and I appreciate that. |
| | We've had serious discussions, sometimes yelling matches, about the plea agreement and, you know, I think through that process, I think Mr. Walker's become quite clear about kind of how the federal system works as a whole which is a bit confusing at times for defendants and about his plea agreement and I think those discussions have led me to the conclusion that he clearly understands what he's doing today. |
| COURT: | Okay. And Mr. Walker, I've been impressed. I don't often get the tough |

| | questions that you've asked today so it does tell me that you read and understood the plea agreement and it's good that you ask those questions if they were still questions that you wanted to either hear confirmation to or explain -- understand a little bit further. But it is difficult to understand the federal system and when I asked you several times do you understand it, that wasn't do you agree with it. I could take -- I could kind of tell you understood that's how I was phrasing the question. |
|---|---|
| PETITIONER: | Yes, ma'am. |
| COURT: | Okay. |
| PETITIONER: | Thank you. And like Kelly said, we are on the back side of it so we had a lot of opportunity to make it through the -- each one of the line items previous to this and it got ugly at times. |
| COURT: | Well, I guess the good news is you made it through it. |

Dkt. 9-1 at 24-26. Petitioner complimented Judge Dale on being "really clear" in conducting the change of plea hearing. *Id*. at 24.

At the close of the hearing, Judge Dale formally inquired of Petitioner: "[S]o at this time then, I'm asking you, what is your plea to Count 1, the charge of conspiracy in the indictment? Guilty or not guilty? Petitioner responded, "Guilty, ma'am." Dkt. 9-1 at 25-26. Judge Dale then concluded:

> [T]he indictment is a knowing and voluntary plea and that there's a factual basis for your plea. I am recommending that the district judge accept your plea and enter a judgment of guilt as to the crime charged in Count 1 of the indictment. I also am recommending that the district judge take under

**MEMORANDUM DECISION AND ORDER - 15**

> advisement the decision whether to accept the terms of the
> plea agreement pending review of the presentence report.

*Id*. at 26.

On December 12, 2016, this Court reviewed the record and Judge Dale's Report

and Recommendation. The Court specifically found that Judge Dale "adhered to the

requirements of Rule 11(b); that under Rule 11(b)(2), the Defendant's plea was voluntary

and not the result of force or threats or promises apart from the plea agreement; and that a

factual basis for the plea exists." Crim. Dkt. 110.

As a result, the Court entered the following Order:

> IT IS [ ] ORDERED that the Defendant's plea of guilty to the
> crimes charged in Count 1 of the Indictment (Dkt.1), shall be,
> and the same is hereby, ACCEPTED by the Court as a
> knowing and voluntary plea supported by an independent
> basis in fact containing each of the essential elements of the
> offense.
>
> IT IS FURTHER ORDERED that Defendant William Lavelle
> Walker is found to be GUILTY as to the applicable crimes
> charged in the Indictment. (Dkt.1).

*Id*. at 2.

In response to the presentence report, and at Petitioner's behest, Mr. Kumm made

written objections disagreeing with the implications that (1) Petitioner was involved in

the drug transaction that occurred at his residence on March 14, 2016, because he was

"residing in Boise" on that date; and that (2) he was involved in the sale of

methamphetamine with Otaegui, just because the marked bills provided to Otaegui were

found on Petitioner's person. Crim. Dkt. 126 at 4. In the presentence report addendum,

the probation officer reviewed the objections and concluded, "This information is noted

**MEMORANDUM DECISION AND ORDER - 16**

for the Court's consideration. No changes be [sic] made to the report." Crim. Dkt. 157-1 at 2.

At the sentencing hearing on June 23, 2017, Mr. Kumm began to argue that Petitioner's sentence should be reduced based upon his "minor role" in the conspiracy—namely that he wasn't present during the drug transactions that formed the basis of the crime and plea, and that he didn't live in the house during most of the conspiracy time frame. Mr. Kumm argued for a mitigating role reduction pursuant to § 3B1.2, "arguing that [Petitioner] was unaware of and had no part of an agreement to deliver any product beyond the products which were delivered by him to his codefendants." Dkt. 9-2 at 52.

This Court stopped Mr. Kumm, because such an argument seemed contrary to the agreed-upon factual basis of the plea agreement, and, consequently, the United States' attorney would not have been on notice that Petitioner was contesting the facts forming the basis of the plea agreement and thus would not have prepared rebuttal evidence. The Court commented that it wished the case had been tried—meaning that there is a clear dividing line between (1) the choice to plead not guilty and proceed to have a jury find facts and determine guilt and (2) the choice to plead guilty to a specific set of facts and have the judge enter an order of conviction based on the stipulated factual basis of the plea. In the first instance, a defendant puts on evidence and argues that the facts are one way or the other, and the jury decides whether the facts support the elements of the crime. If the facts support the elements of the crime, the defendant is not permitted to dispute or retry the jury's factfinding at the sentencing hearing. However, if the defendant and the United States agree that the facts are one way and *not* the other in a written plea

**MEMORANDUM DECISION AND ORDER - 17**

agreement, that has the same legal effect as jury factfinding, and the defendant has thus given up his right to contest the stipulated facts at sentencing. By analogy, the sun sets on the defendant's right to contest the factual basis of the crime either when a jury decides that a defendant is guilty of the crime charged *or* when the Court accepts a guilty plea and enters a conviction based on a stipulated factual basis for the crime charged.

In general, factual disputes over the content of the presentence report mut be raised by written objections. *See* Fed. R. Crim. P. 32(f). When there are controverted matters in the report, the Court must make a finding to resolve the dispute or state that the disputed matters will not affect sentencing or will not be considered in sentencing. *See* Fed. R. Crim. P. 32(i)(3)(B). To resolve disputes, the court is not required to conduct an evidentiary hearing, but it may conduct a hearing if it deems necessary.

At the sentencing hearing, the Court addressed Petitioner's factual dispute by determining that Petitioner's "minor role" argument was inconsistent with the path he had chosen (to plead and be adjudged guilty) and the admissions he had made. Therefore, he was not permitted to revisit the factual basis for the claim, because that would call into question his guilty plea and conviction. The fact that Mr. Kumm had included this argument in his objections to the presentence report does not automatically mean that he is entitled to bring forward supporting evidence at the sentencing hearing.

Rather, the Court is the factfinder in resolving factual disputes and determines whether further factual development is warranted. Here, the Court found:

> Every indication is that Mr. Walker was a supplier or participated in supplying these drugs to the individuals who are then distributing them. He admitted that he was

**MEMORANDUM DECISION AND ORDER - 18**

distributing 2 pounds of methamphetamine per month in the area. And I think to suggest in any way that he is a minor participant in this drug conspiracy is asking the court to swallow an elephant but strain out a gnat. It's just not consistent with the facts at all.

So I'll overrule that objection.

Dkt. 9-2 at 53.

Mr. Kumm also challenged the amount of drugs attributable to Petitioner at the sentencing hearing. The written plea agreement stated that part of the factual basis of the crime was that "[d]uring the course of the conspiracy, the defendant was responsible for the distribution of in excess of 1.5 kilograms of methamphetamine." Crim. Dkt. 93 at 3. In contrast, the presentence report stated: "Pursuant to the plea agreement, the defendant admitted and agreed that he was involved in the distribution of at least 1.5 kilograms of *actual* methamphetamine." Crim. Dkt. 117 at 18 (emphasis added). Elsewhere in the presentence report, the probation officer concluded:

> [P]ursuant to § 2D1.1, comment. (n.5), because the "amount seized does not reflect the scale of this offense, the Court shall approximate the quantity of the controlled substance." Based upon the duration and scale of the offense as detailed by interviews with codefendants the defendant was responsible for significantly more methamphetamine than 192.68 grams. While the probation officer has no specific amount of drugs that the defendant's trafficked, the plea agreement in this case states that the defendant and the government agree William Lavelle Walker is responsible for at least 1.5 kilograms of *actual* methamphetamine. Given the information from the arresting and investigative agencies, this figure appears appropriate and reasonable to account for the defendant's actions. Therefore, the defendant will be held accountable for 1.5 kilograms of *actual* methamphetamine.

Crim Dkt. 117 at 9 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 19**

Mr. Kumm made a written objection to the presentence report statement that "at least 1.5 kilograms [about 3.33 pounds] of actual methamphetamine" should be the basis for the drug guideline calculation. Mr. Kumm stated that the "defendant does not contest the drugs actually delivered in this case were in excess of 150 grams, but less than 500 grams of *actual* methamphetamine [1.15 and .5 kilograms]" (parentheticals and emphasis added). Crim. Dkt. 126 The probation officer agreed and revised the presentence report to show that Petitioner would be held responsible only for the actual methamphetamine that he was personally involved with, which is 192.68 grams (.42 pound). Dkt. 157-1 at 3.

At the sentencing hearing the Court overruled that objection as moot:

> There is ... an objection to paragraph 34 concerning the drug guideline calculation. I think the defendant came perilously close to breaching the plea agreement by arguing that he should be held accountable for less than the specific amount which the plea agreement provided for, which was at least 1.5 kilos of methamphetamine.

> There is no methamphetamine actual/ methamphetamine mixture disparity in this case for that reason. 1.5 kilos of a mixture of methamphetamine is precisely the same guideline that would apply if I had used the 192.68 grams of methamphetamine actual, which was argued for in the alternative by the defense.

> So the base offense level is 32 under either calculation.

Dkt. 9.2 at 51. Hence, both "disputes were resolved by the Court on the record without the need for further factual development.

Prior the sentencing hearing, Petitioner asked Mr. Kumm to request probation for him. Mr. Kumm refused to do so, because the crime to which Petitioner pleaded guilty "forbade a sentence of probation." Dkt. 1-1, p. 8; *see* Crim. Dkt. 158 at 1. Against the

**MEMORANDUM DECISION AND ORDER - 20**

advice of his counsel, Petitioner asked the Court for "alternative sentencing" or a "different kind of sentencing" other than prison. Dkt. 9-2 at 48.

Instead of putting on Petitioner's "probation" argument that had no basis in law, Mr. Kumm asked the Court for the lowest sentence possible on the basis of Petitioner's cooperation with and assistance to law enforcement investigators. Dkt. 1-1 at 8. Weaving Petitioner's desired "minor role" argument together with his own strategy, Mr. Kumm argued: "[M]y point here is that in terms of the sentencing that's gone on here, to finger Mr. Walker now as this major drug player and sentence him accordingly is just wrong given the cooperation that he has provided and the risks that he has undertaken." Dkt. 9-2 at 33.

Based on the guilty plea at sentencing, the total offense level was calculated at 31, with a guideline range of 135 to 168 months, prior to the § 5K1.1 government recommendation for departure. *Id*. at 2; Dkt. 178 at 1. In contrast, had Petitioner proceeded to trial and lost, Petitioner would have been facing a "total offense level of 35 and a range of 210 to 262 months." See Dkt. 117 at 17.

Mr. Kumm recommended 36 months of incarceration. Knowing that Petitioner wanted him to request probation, an impossible-to-fulfil request, Mr. Kumm noted, "I say that knowing that my client disagrees with that recommendation, but I think that that's a credible and valid sentence in this case." Dkt. 9 at 36. Pursuant to the plea agreement, the United States recommended a sentence of 87 to 108 months. The probation officer recommended a sentence of 135 months. Dkt. 158 at 1-2. After hearing from the

attorneys and Petitioner, the Court sentenced Petitioner to 87 months of incarceration, followed by three years of supervised release.

On June 29, 2017, Petitioner filed a Notice of Appeal. (Crim. Dkt. 175.) On February 22, 2018, new appellate counsel, was appointed. (Crim Dkt. 190.) On October 26, 2018, the Ninth Circuit Court of Appeals dismissed Petitioner's appeal. (Crim. Dkt. 199.)

On September 12, 2019, Petitioner filed the § 2255 Motion now before the Court. Petitioner's claim is that Mr. Kumm "did not properly advise him of the consequences of accepting the plea offer from the Government versus going to trial." Dkt. 1 at 1. This general claim is based on the following subclaims. Claim 1(a) is that Mr. Kumm failed "to investigate, or make a reasonable determination why such investigation was unnecessary, regarding the defendant's minor role in the charged conspiracy." *Id*. Claim 1(b) is that counsel was ineffective at the sentencing hearing for failure "to move for an immediate continuance due to the proceeding's devolvement into a contest of disputed facts." *Id*. Claim 1(c) is that counsel used "coercion and threats to prompt [Petitioner] to accept a Rule 11 plea agreement both unknowingly and involuntarily." *Id*. Claim 1(d) is that counsel failed "to conduct any pretrial discovery regarding [Petitioner's] criminal history or whereabouts during the pendency of the alleged conspiracy."

In addition, Petitioner generally alleges that Mr. Kumm told the Idaho State Bar he was suffering from early onset dementia. Dkt. 14, p. 6. What Mr. Kumm's letter actually says is this:

> I have often been accused by family and staff of being
> absent-minded and there is no doubt that I am. In 2017, I
> received counseling and medication for a mild, temporary
> depression from which I was suffering but I have never been
> diagnosed with anything more serious than that.

Dkt. 1-1, p. 9. Mr. Kumm states in his Affidavit that he was not taking a mental health

medication during the time period at issue (between October 2016 and June 28, 2017)

and was not suffering from any type of dementia during that time. Dkt. 9-3.[4]

### STANDARD OF LAW

Title 28 U.S.C. § 2255 provides that a federal court may grant relief to a federal

prisoner who challenges the imposition or length of his incarceration if he shows that "the

sentence was imposed in violation of the Constitution or laws of the United States." 28

U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal

district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion,

any attached exhibits, and the record of prior proceedings that the moving party is not

entitled to relief." In order to proceed on a § 2255 motion, the movant must make

"*specific factual allegations* that, if true, state a claim on which relief could be granted."

*United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984) (citation omitted)

(emphasis added).

---

[4] The Court finds it unnecessary to have Mr. Kumm clarify which months in 2017 he was taking an antidepressant, because the record reflects that he performed adequately in his representation of Petitioner.

**MEMORANDUM DECISION AND ORDER - 23**

"Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (citation omitted). Under § 2255, a district court must grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(a). No hearing is necessary if the allegations can be refuted from the trial record. *Miller v. United States*, 339 F.2d 704, 705 (9th Cir.1964). Mere conclusory allegations do not warrant an evidentiary hearing. *Shah v. U.S.*, 878 F.2d 1156, 1161 (9th Cir. 1989) (citing *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir.1982)).

Case law and the Rules Governing Section 2255 Cases recognize that courts may expand the record with discovery and documentary evidence. *Blackledge v. Allison*, 431 U.S. 63, 81-83 (1977); *Farrow v. United States*, 580 F.2d 1339, 1352-53 (9th Cir.1978); Rule 7 of the Rules Governing Section 2255 Proceedings. Judges may also supplement the record with their own notes and recollections of the plea hearing, as well as common sense. *Abatino v. United States*, 750 F.2d 1442, 1444 (9th Cir.1985); *Farrow*, 580 F.2d at 1352; *Shah*, 878 F.2d at 1159.

Decisions to hold hearings and conduct discovery in such cases are committed to the court's discretion. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Section 2255 requires only that the judge give the prisoner's claim "careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Blackledge*, 431 U.S. at 82-83. Section 2255 itself "recognizes that there are times when

**MEMORANDUM DECISION AND ORDER - 24**

allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner." *Machibroda*, 368 U.S. at 495.

A defendant is entitled to effective assistance of counsel at all stages of a criminal proceeding, including plea negotiations, trial, and sentencing. *United States v. Leonti*, 326 F.3d 1111, 1116-17 (9th Cir. 2003). The well-established two-prong test for evaluating ineffective assistance of counsel claims consists of a showing of deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984). A defendant must show that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 697. *See also Bell v. Cone*, 535 U.S. 685, 695 (2002). Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *Shah*, 878 F.2d at 1161.

To establish deficient performance, a defendant must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" or that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 686-87. There is a strong presumption that counsel's performance fell "within the wide range of reasonable professional assistance," and judicial scrutiny of that performance must be "highly deferential." *Id*. at 689.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

**MEMORANDUM DECISION AND ORDER - 26**

*Id.* at 690-91. Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense. *Id.*

The second *Strickland* prong requires the petitioner to show that the deficient performance prejudiced the defense. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This standard is "highly demanding." *Kimmellman v. Morrison*, 477 U.S. 365, 381-82, 86 (1986) (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

The *Strickland* two-part test applies when a defendant contends that his counsel was constitutionally inadequate during the guilty plea process. *Hill v. Lockhart*, 474 U.S. 54, 58 (1985). In the guilty plea context, a defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58-59. Rather than simply being able to say he would have proceeded to trial, a defendant must show the likelihood of a more favorable outcome at trial. *Id.*

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. at 56, quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). "A defendant who pleads guilty upon the advice of

**MEMORANDUM DECISION AND ORDER - 27**

counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). In evaluating an ineffective assistance of counsel claim, the Court need not consider one prong if there is an insufficient showing of the other. *Strickland*, 466 U.S. at 697.

## ANALYSIS

1.     **Claim 1(a)**

Claim 1(a) is that Mr. Kumm failed "to investigate, or make a reasonable determination why such investigation was unnecessary, regarding the defendant's minor role in the charged conspiracy." *Id*. Petitioner has not provided an adequate factual basis for this claim for the following reasons.

As set forth above, the evidence showed, and the Court found, that Petitioner was a supplier in the conspiracy. Petitioner admitted at the change of plea hearing, that, in furtherance of this conspiracy, he supplied methamphetamine to his co-defendants on several occasions for subsequent distribution within various locations in southern Idaho. Stated differently at the change of plea hearing, he admitted that he had an agreement

with one of the co-defendants in this case to distribute methamphetamine, and that, intending to accomplish the distribution, he specifically purchased methamphetamine and then distributed it.

Petitioner's § 2255 argument overlooks the fact that, for a conspiracy charge, he did not have to be present or directly participate in the sale of drugs to the police informants or undercover officers. The supplier in a drug conspiracy is the foundation of the conspiracy. It is clear from the record in this matter that Petitioner was the supplier, Jones was a middle distributor, Otaegui was a dealer, and Hernandez, for lack of a better term, was the dealer's apprentice. Even if Petitioner used a middleman such as Jones to distribute the drugs to the dealers, that does not diminish Petitioner's role as the ultimate supplier that the users depended on for their devasting drug habit. Petitioner specifically admitted to law enforcement officers that Otaegui "had been coming to his house and picking up methamphetamine from Jones." Critically, Petitioner admitted that he supplied the methamphetamine to Jones that Jones sold to Otaegui.

The government investigators collected strong evidence against the members of the conspiracy by having agents participate in drug buys with marked bills and using a tracking device attached to Otaegui's car showing his visits to Petitioner's house on two separate occasions in March. Petitioner asserts he was not in Twin Falls in March. However, inherent in the conspiracy charge is the implication that, during the time period charged, the conspirators conducted an unknown number of actual drug deals in furtherance of the conspiracy, in addition to the controlled purchases. It makes little sense to believe that the only sales the conspirators made were to government informants or

MEMORANDUM DECISION AND ORDER - 29

undercover officers. The conspiracy charge is for a time period, not several specific dates. Jones told investigators that *many* people that would come to the residence *often*.

Petitioner certainly had personal knowledge of his own calendar between February and April 2016, and thus should have provided it to counsel if he wanted counsel to argue that Jones, not he, was the methamphetamine supplier for the two March controlled purchases. It was during that time period when Otaegui traveled back and forth from Petitioner's house to get drugs, which he sold to confidential informants, and for which he received the marked bills that were ultimately found in Petitioner's possession.

However, Petitioner did not provide any additional information to Mr. Kumm, other than what was presented at the sentencing hearing. Carolyn Manwaring testified: "In March of 2016, Bill was in Twin Falls, Idaho, one day and returned the same day. His grandson had just been born. During that month, he stayed with me getting his daughter's home nursery ready and deck built." Dkt. 9-2 at 8. Caitlin Walker clarified that Petitioner worked on those projects as early as January 2016, one month before the conspiracy's start date. *Id*. at 10. She said that Petitioner came over daily after his grandson Emerson was born. "He would hold Emerson so I could shower or take us to the store because I couldn't go alone. He took us -- he took me when my son had a procedure, holding my hand so I wouldn't panic. He continually did this through those later winter/early spring months." Dkt. 9-2 at 11.

None of this testimony provided exact dates that controverted the March drug deal dates, nor did it address the potential that Petitioner could have supplied the drugs without actually being in Twin Falls on those dates, because he kept drugs hidden in his

**MEMORANDUM DECISION AND ORDER - 30**

house and shed and was using Jones as a middleman. Additionally, Petitioner has provided no evidence about how he was able to continue to "work[] 40 to 50 hours a week" operating his pest control business out of his Twin Falls home if he spent all of his time in Boise, as he alleges. *See* Crim. Dkt. 157 at 17. And, just as with the March controlled purchases, Petitioner has not provided specific evidence showing that he could not have supplied the drugs to Otaegui and Hernandez for the February controlled purchases.

Moreover, Petitioner *admitted* that he supplied the drugs to Jones that Jones sold to Otaegui in March. How additional sentencing hearing testimony about Petitioner's whereabouts and activities could have successfully controverted his earlier admissions is a mystery.

Even though Petitioner's arguments about his whereabouts and activities between February and April were futile, Mr. Kumm did incorporate them into his sentencing argument. Mr. Kumm argued that Petitioner was not at home during March. Mr. Kumm also argued that Jones, Petitioner's roommate, was actually the person who sold the drugs to the dealers. Mr. Kumm specifically argued that Petitioner spent a lot of time in Boise and did not return home to Twin Falls until April 19, the day before the arrest occurred. Dkt. 9-2 at 21.

Even now, Petitioner does not provide any further facts that might have bolstered his argument about his whereabouts and activities during the conspiracy dates, nor does he state why he did not furnish those to Mr. Kumm prior to sentencing. His stance that it was permissible for him to remain silent as to these facts and that Mr. Kumm should have

**MEMORANDUM DECISION AND ORDER - 31**

discovered them himself is incorrect. Beyond that, Petitioner's desired factual development was irrelevant and futile in light of his own Mirandized admissions and acknowledged participation in the conspiracy, memorialized in the executed plea agreement.

Petitioner similarly asserts that, just because he had possession of some of the marked bills does not mean he was the supplier involved in the Otaegui/informant drug deals. Petitioner regularly bought and sold used cars as a side business. *See* Crim. Dkt. 157 at 17. He asked Mr. Kumm to argue that Petitioner received the marked money from Jones when Jones purchased a car from Petitioner. Mr. Kumm complied with Petitioner's wishes. Dkt. 9-2 at 28.

Petitioner surely had knowledge of and access to his own business records. He does not allege that he provided Mr. Kumm with the make and model of the car, a business receipt, evidence that such a car was registered to him and now registered to Jones, or any other evidence that could have been used to support this claim. Petitioner should not have remained silent about these facts and expected Mr. Kumm to discover them. In any event, the Court prevented Mr. Kumm from proceeding further with this argument or from offering evidence that impermissibly controverted his executed plea agreement, demonstrating that an investigation into these "facts" was irrelevant and unnecessary.

Petitioner further faults his counsel for not investigating facts to support Petitioner's claim that he did not supply at least 1.5 kilograms of a methamphetamine mixture or 192.68 grams of actual methamphetamine to his co-conspirators for

**MEMORANDUM DECISION AND ORDER - 32**

distribution or direct sale. Petitioner has failed to provide any facts showing that such an investigation would have been fruitful, or how Mr. Kumm would have been able to explain away Petitioner's admissions that he sold about two pounds of methamphetamine per month—which would have been four pounds for the February 24 to April 20, 2016 time period charged—*more* than the stipulated amount of 1.5 kilograms (about 3.3 pounds).

Even if Petitioner provided such information to Mr. Kumm, or even if Mr. Kumm failed to investigate this type of evidence, Petitioner has shown neither deficient performance nor prejudice because Petitioner already admitted to supplying 1.5 kilos of (nonpure) methamphetamine *and* agreed that all of the elements of a conspiracy with the co-defendants were met—with the underlying admission that his role was the supplier. He admitted providing the drugs to Jones that Jones provided to Otaegui to sell on the streets. Therefore, counsel had no duty to look for information to contradict Petitioner's admissions. Petitioner's admissions both within and outside the plea agreement made these particular investigations unnecessary. *See Strickland*, 466 U.S. at 691.

Mr. Kumm obviously (and rightly) disagreed with Petitioner about trying to present calendaring and car sale evidence to show Petitioner played a "minor role" in the conspiracy. For Petitioner to insist that Mr. Kumm should present evidence controverting Petitioner's admissions and risk breaching the plea agreement was improper and imprudent. Yet, Mr. Kumm tried to take the middle ground to appease Petitioner's desires by highlighting Jones' role in the conspiracy and downplaying Petitioner's role. Mr.

Kumm also argued that Petitioner's cooperation warranted a large departure to 36 months of incarceration.

The foregoing discussion demonstrates that Petitioner has not shown that Mr. Kumm's investigatory performance was deficient or that it prejudiced Petitioner's case at sentencing. This subclaim is subject to denial.

**2.  Claim 1(b)**

Claim 1(b) is that Mr. Kumm was ineffective at the sentencing hearing for failure "to move for an immediate continuance due to the proceeding's devolvement into a contest of disputed facts." *Id.* It is clear from the record that Petitioner did not need a "continuance" at all. Petitioner was not asserting that his presence was involuntary or that he was seeking to withdraw his plea. *See* Dkt. 9-2 at 40-50. Instead, he wanted to controvert his earlier admissions that formed the factual basis of the plea agreement and other supporting admissions—all in an attempt to convince the Court to give him probation, rather than a prison sentence, which was impossible.

The Court resolved Petitioner's disputed facts by determining that the record clearly reflected he did not play a minor role in conspiracy and that the 1.5 kilograms of methamphetamine netted the same offense level as 192.68 grams of actual methamphetamine. Therefore, no continuance was necessary, and a motion for a continuance would not have been granted. Petitioner has failed to bring forward any facts showing that Mr. Kumm performed deficiently or that Petitioner was prejudiced by a failure to move for a continuance at the sentencing hearing. This subclaim is subject to denial.

**MEMORANDUM DECISION AND ORDER - 34**

3.      **Claim 1(c)**

Claim 1(c) is that counsel used "coercion and threats to prompt [Petitioner] to accept a Rule 11 plea agreement both unknowingly and involuntarily." *Id*. Petitioner claims that trial counsel coerced or threatened him to plead guilty, and, as a result, Petitioner's plea was not knowing and voluntary. Dkt. 1 at 1-3. This claim fails for lack of factual support. No threat is apparent from Mr. Kumm's statement to Ms. Walker that, if Petitioner did not accept the plea bargain, he could face 20 years in prison. That was simply a fact. Petitioner would not have been able to obtain the downward departures that come with a plea agreement, as noted above, if he would have proceeded to trial.

Petitioner reasons that Mr. Kumm's statement constituted a "threat" because Mr. Kumm, knew that he disputed the United States' version of the facts. *Id*. That is an untenable assertion. Just because that was the only offer on the table does not mean that Petitioner had to accept it if he "disputed" the factual basis for the plea offer. An attorney's conveyance of an offer that a defendant does not want to accept does not turn into a threat when the attorney tells the defendant that, though not a perfect offer, it is an offer than will net him less prison time than proceeding to trial on bad facts.

It is clear that Petitioner did not want to risk a sentence of 20 years, and so, even though he would have *preferred* to plead guilty to a lesser role or a lesser amount of methamphetamine, he weighed his options and *decided* to plead guilty to the conspirator role and drug amount suggested by the government. That was clearly his own choice. If it was not reflective of reality, he could have chosen to proceed to trial and prove that. However, the record shows that it *was* reflective of reality, because, after Petitioner was

**MEMORANDUM DECISION AND ORDER - 35**

arrested, he admitted to investigators the facts that formed the basis of the plea agreement. Later, Judge Dale asked Petitioner over and over again, in several different ways, whether he agreed with his role and the drug amounts. Over and over again Petitioner said yes. The record reflects that Petitioner is intelligent; he considered every fact and every avenue before pleading guilty; he asked his counsel and the judge many questions and understood what he was doing; he was competent to plead guilty; and he did, in fact, plead guilty *upon a specific set of facts*.

Importantly, at the change of plea hearing, Judge Dale specifically asked Petitioner, "Has anyone threatened you, Mr. Walker, or threatened anyone you know or forced you in any way to *enter into the plea agreement*?" Dkt. 9-1 at 14. Petitioner responded, "no, ma'am." *Id*. Judge Dale further probed, "Has anyone threatened you or threatened anyone you know or forced you in any way to *plead guilty to this charge*?" *Id*. Petitioner again responded, "no, ma'am." *Id*. Judge Dale questioned whether there had been any promises other than the promises made in the plea agreement that would induce Petitioner to plead guilty. *Id*. at 24. Petitioner indicated that no promises had been made. Id. Only after receiving responses that indicated Petitioner fully understood the plea agreement and that he was making a knowing and voluntary plea did the Court accept Petitioner's plea of guilty. *Id*. at 1-31. Nothing in the entire record shows that Petitioner's plea was coerced, unintelligent, or involuntary. This subclaim is subject to denial.

### 4.    Claim 1(d)

Claim 1(d) has two subparts: (i) is that counsel failed "to conduct any pretrial discovery regarding [Petitioner's] criminal history"; and (ii) that counsel failed "to

conduct pretrial discovery on Petitioner's "whereabouts during the pendency of the alleged conspiracy." Dkt. 1.

i.    Subclaim (i)

In an effort to show that parts of Petitioner's criminal record was overstated, Mr. Kumm highlighted that one of the points was for a stolen library book and another was for having an open container—both minor offenses. Mr. Kumm also stated that, though he did not file a written objection on it—it had just come to his attention that Petitioner had never spent three years in prison, as the presentence report suggested. At the hearing, the report, the probation officer who wrote the report, and the Court agreed that the report seemed to support a suggestion that Petitioner's revocation of probation in 2008 resulted in a three-year period of incarceration that ended in 2011.

A closer look at the state court record in that case shows that Petitioner was convicted of theft by possession of stolen property in August 2005, for which he received a suspended five-year unified sentence. Several probation violation were reported. A motion to revoke parole was filed on October 3, 2008. On March 10, 2009, Petitioner's probation was *revoked* and his sentence *imposed*, but—oddly—he did not have to serve his sentence because it *was immediately suspended again on that same date*, with imposition of four years of probation. Petitioner moved for and obtained an order of release from probation in that case on July 20, 2011. Exhibit1 to Order, p. 36, 37.

Petitioner brought the fact that he never served three years in prison to Mr. Kumm's attention just before the sentencing hearing. Petitioner obviously intimately knew that fact when he reviewed the presentence report to help prepare the written

**MEMORANDUM DECISION AND ORDER - 37**

objections—but he himself missed the report's implication that he had been imprisoned rather than released in 2008-09. *See* Dkt. 9-2 at 24. Petitioner asserts that Mr. Kumm should have found this oddity that Petitioner did not.

Even if counsel was deficient for failing to detect that information, no prejudice resulted from the Court having been left with the impression that Petitioner had served three years in prison. Because the Guidelines calculation is based on the maximum sentence imposed rather than the amount of time served, this point is moot. Petitioner was sentenced to a five-year unified sentence, and so the points assessed still would have been three, because three points are assessed for prior sentences longer than thirteen months.

In addition, the Court's concern at the sentencing hearing was that Petitioner simply went back to methamphetamine time and time again from 2005 through 2016, when Petitioner was on pretrial release awaiting trial on the instant offense. His repeated involvement with methamphetamine that evolved from using to supplying—not any mistaken prior incarceration—was the focus of the Court's attention in fashioning Petitioner' sentence. The Court highlighted the "staggering" behavior of Petitioner having been "given the privilege of pretrial release on May 6, 2016, while awaiting trial," violating the terms of the release by "continuing to use methamphetamine and failing to abide by the rules of the location monitoring program." Dkt. 9-2 at 54.

ii.     Subclaim (ii)

The Court addressed above Petitioner's assertion that Mr. Kumm should have done more to discover or present evidence of Petitioner's whereabouts or his alleged car sale to Jones for the purpose of demonstrating that Petitioner played only a minor role in

MEMORANDUM DECISION AND ORDER - 38

the conspiracy. Such evidence would not have aided Petitioner's position, and, therefore, Mr. Kumm rightly did not spend time pursuing such discovery. Petitioner himself had knowledge of any such facts and should have disclosed them to Mr. Kumm. In any event, because this information was irrelevant and improper, given the plea agreement's stipulated facts, no prejudice regarding Petitioner's sentence resulted.

Petitioner received the lightest sentence possible, 87 months, *as a result of* pleading guilty, taking responsibility for his role in the conspiracy, and cooperating with law enforcement investigators to provide them with information about other crimes and suspects.

## 5.    Conclusion

Both Judge Dale and this Court concluded that Petitioner understood the consequences of pleading guilty and that the pleas were given freely and voluntarily. The terms of the plea agreement are clear, narrow, and particular in the context of a conspiracy charge. Petitioner stated under oath—knowing that the penalty for lying in that proceeding was a perjury prosecution—that he did what the plea agreement attributed to him as his part in the conspiracy.

In instances where a defendant comes into court and testifies one way before he knows his sentence, and then testifies another way after he has been sentenced, the United States Supreme Court has observed:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn

> declarations in open court carry a strong presumption of
> verity. The subsequent presentation of conclusory allegations
> unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly
> incredible.

*Blackledge*, 431 U.S. at 73-74. *See also United States v. Ross*, 511 F.3d 1233, 1236 (9th

Cir. 2008) (affirming that a defendant's in court statements should be given the "strong

presumption of veracity in subsequent proceedings attacking the plea"); *United States v.

Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001) (affirming the "substantial weight" given

to a defendant's in-court statements).

Accordingly, it is not a matter of determining that Petitioner is altogether

noncredible in his testimony and declarations then and now, but that he already had been

deemed competent at the time he first testified at the change-of-plea hearing, that he

entered his guilty plea in a knowing and voluntary manner, and that he did not then know

his sentence at that at time, and, thus, had less motive to testify falsely, as compared to a

declaration made after his sentence is known. Here, Petitioner has not convincingly set

forth facts showing why his in-court testimony should now be found not credible.

Nothing in Petitioner's 2255 motion alters the Court's earlier findings about the

underlying facts and the appropriateness of the sentence given. There is no evidence that

Mr. Kumm coerced or threatened Petitioner into pleading guilty. Mr. Kumm astutely

analyzed the evidence in Petitioner's case and concluded that Petitioner was likely to be

convicted at trial and receive a longer sentence than if he pleaded guilty. There is nothing

in the record of the criminal proceedings that would suggest Mr. Kumm was suffering

from dementia or a mental health issue that negatively affected his ability to represent Petitioner in an effective manner.

The actual sentence imposed supports the conclusion that counsel's advice was sound, as Petitioner received the lowest possible sentence with Mr. Kumm's expertise. Petitioner received a much shorter sentence than what awaited him if he had proceeded to trial and lost (and the record reflects that the United States had strong evidence against him and likely could have called his co-conspirators as witnesses against him). The Court concludes that the facts in the record are clear, Petitioner's showing in support of his § 2255 motion is insufficient, additional factual development would not be helpful because the claims are based on futile notions, and there is no need for an evidentiary hearing to resolve the § 2255 motion before denying it in its entirety.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1)/(Crim. Dkt. 201) is DENIED.

2. Petitioner's Motion to Limit Disclosure of Attorney-Client Privileged Information and for Appointment of Counsel (Civ. Dkt. 7) is DENIED.

3. No certificate of appealability shall issue. Petitioner may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4.  If Petitioner files a timely notice of appeal, and not until such time, the Clerk
    of Court shall forward a copy of the notice of appeal, together with this Order,
    to the Ninth Circuit Court of Appeals. The district court's file in this case is
    available for review online at www.id.uscourts.gov.

DATED: December 28, 2020

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 42